870 A.2d 873

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF GENERAL SERVICES, and Department of Revenue, Appellee,**

v.

**ON–POINT TECHNOLOGY SYSTEMS, INC., Appellant.**

**No. 264 MAP 2003.**

Supreme Court of Pennsylvania.

Argued May 13, 2004.

Decided March 30, 2005.

Terry M. Henry, Esq., Robert William Hayes, Esq., Philadelphia, for On–Point Technology Systems, Inc.

Nancy J. Kippenhan, Esq., Gary F. Ankabrandt, Esq., Trent Hargrove, Esq., Jaime Marie McClintock, Esq., for Department of General Services.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *ORDER*

PER CURIAM.

**AND NOW,** this 30th day of March, 2005 the Order of the Commonwealth Court is hereby **AFFIRMED.**

Mr. Justice SAYLOR files a concurring and dissenting statement in which Messrs. Justice NIGRO and BAER join.

Justice SAYLOR, concur and dissent.

I agree with the Commonwealth Court that Appellant has failed to establish that it was a party to a consummated procurement contract with the Commonwealth. *See Commonwealth, DGS v. On–Point Technology Systems, Inc.,* 821 A.2d 641, 649 (Pa.Cmwlth.2003). Nevertheless, I would uphold the Board of Claims' determination that the parties entered into a valid and binding agreement to negotiate in good faith. *See On–Point Technology Systems, Inc. v. Commonwealth, DOR,* No. 2267, *slip op.,* at 26 (Board of Claims Mar. 21, 2002). I believe that the Board's finding in this regard is supported in the record, in that such duty arose out of: the Commonwealth's letter of intent to enter into a contract negotiation in the context of a request for proposal which both specified that negotiations resulting in a contract would be undertaken with the responsible vendor best meeting the Commonwealth's needs and detailed an orderly, evenhanded procedure under which proposals were to be considered, *see id.* at FOF ¶¶ 52, 73;[1] Appellant's acceptance of the offer to negotiate in good

---

1. Although the request for proposal and letter of intent contained the reservation that the Commonwealth was making no contractual commitment, I do not read such reservation as obviating a duty to negotiate in good faith and on the terms specified in the request for proposal. At most, I believe that the reservations create an ambiguity in terms of

faith which was both express and via substantial preparatory and anticipatory efforts and expenditures; *see id.* at FOF ¶ 85, and a substantial course of conduct on the part of Commonwealth representatives leading Appellant to reasonably believe that a procurement contract was forthcoming. *See id.* at FOF ¶¶ 69–70, 86–98, 104–06. I would also specifically confirm the Third Circuit's prediction that this Court would cognize a contract-based cause of action for breach of an agreement to negotiate in good faith. *See Channel Home Centers, Div. of Grace Retail Corp. v. Grossman,* 795 F.2d 291, 299 (3d Cir. 1986); *see also Flight Systems, Inc. v. Electronic Data Systems Corp.,* 112 F.3d 124, 130–31 (3d Cir.1997).

Notably, the focus of the Commonwealth Court's decision in this case was on its determination that no actual procurement contract existed—the court does not appear to have independently assessed the sustainability of the Board of Claims' finding of an agreement to negotiate in good faith based on the request for proposal, letter of intent, and Appellant's responses. Additionally, the Commonwealth Court in no way

their effect on an implied duty to negotiate in good faith arising from the commitment to future negotiations, *see generally City of Tacoma, Dep't of Public Utilities v. United States,* 31 F.3d 1130, (Fed.Cir.1994) (stating that allowance for future negotiations "'impliedly places an obligation on the parties to negotiate *in good faith*'" (citation omitted; emphasis in original)); *accord Planning and Design Solutions v. City of Santa Fe,* 118 N.M. 707, 885 P.2d 628, 635 (N.M.1994) (citing cases), which ambiguity is fully resolved by reference to other findings of the Board of Claims concerning assurances furnished by the Commonwealth.

Notably, while denying that it had any contractual obligations or duties to Appellant in general terms, the Commonwealth's brief never specifically advances the position that the Commonwealth lacked an obligation of good faith. Rather, on the subject of good faith, the Commonwealth merely indicates that it was maintained at all times, contrary to the picture that is reflected in the determination of the Board of Claims as fact finder. Significantly, however, the Commonwealth offers no directed effort to demonstrate that the Board of Claims' findings are unsupported by substantial evidence of record. Indeed, little reference is made to the Board's findings in the Commonwealth's brief, which primarily advances the Commonwealth's position based on the evidence which was favorable to it, notwithstanding that our review of the fact finding aspect of the decision is deferential. *See Shovel Transfer and Storage, Inc. v. PLCB,* 559 Pa. 56, 62, 739 A.2d 133, 136 (1999).

discounted the Board of Claims' extensive findings supporting its determination that the Commonwealth breached its obligation of good faith.[2] Rather, the court merely attributed no legal significance to the Commonwealth's conduct as found by the Board of Claims in terms of its contract analysis, which, again, appears focused on the procurement aspect. *See On-Point Technology*, 821 A.2d at 650.

Thus, and as I believe that the Board of Claims' distinct finding of a breach of duty to negotiate in good faith is supported by the record, I am unable to join the majority's present, *per curiam* affirmance of the Commonwealth Court's order. Moreover, I would sustain the Board of Claims' order to the degree that it reflects an award of reliance damages predicated on the noted breach.[3] Since, however, I agree with the Commonwealth Court that the procurement contract was never consummated, I recognize that the Board of Claims'

**2.** The Board's essential finding was that Commonwealth officials departed from the orderly and evenhanded procedures detailed in the request for proposal, conducted undisclosed meetings with a disappointed bidder while offering repeated assurances to Appellant causing continuing preparatory expenditures, and ultimately cancelled the request for proposal based upon pressure from the other bidder as opposed to considerations fairly related to the legitimate interests of the Commonwealth in terms of securing the intended procurement on the most beneficial terms. *See On–Point*, No. 2267, *slip op.*, at 21–26. I acknowledge the Commonwealth's argument that the Board of Claims' findings and conclusions in this regard are in tension with the reasoning of a federal district court which granted summary judgment in an action brought by Appellant against the disappointed bidder seeking damages for tortious interference with contract. *See International Lottery, Inc. v. Lottery Enterprises, Inc.*, C–1–96–205 (S.D.Ohio March 13, 1998). As the Commonwealth concedes, however, it did not invoke the theory of collateral estoppel before the Board of Claims; therefore, there is presently no basis for concluding that the Board of Claims was in error in making its own determinations based on the evidence before it and independent of those of the federal district court.

**3.** I recognize that there are arguments favoring the availability of expectancy damages in this setting. *See, e.g.,* Frederick W. Claybrook, Jr., *Good Faith in the Termination and Formation of Federal Contracts,* 56 Md. L.Rev. 555, 582–84 (1977). However, in absence of a directed effort to invoke this Court's consideration of the relevant policy considerations, *see id.,* I would presently adhere to the more conservative approach limiting the recovery to reliance damages.

award is properly vacated to the extent that it embodies benefit-of-the-bargain damages.

Mr. Justice NIGRO and Mr. Justice BAER join this concurring and dissenting statement.